JUSTICE SHEEHY,
dissenting:
I dissent on three grounds: 1) That at all times herein there was confusion, even among county attorneys, as to the application of law to video-electronic keno machines; 2) The contract here for the manufacture of the machines is severable from any illegality; and 3) Principles of restitution allow recovery here.

Confusion in the Law

In Treasure State Games, Inc. v. State (1976), 170 Mont. 189, 551 P.2d 1008, this Court held that electronic bingo and keno machines *351 were lawful in Montana under the Bingo and Raffle Law of 1974. At that time, sec. 23-5-412, MCA, provided:
‘ ‘Bingo prizes [including keno] must be in tangible personal property only and not in money, cash, stocks, bonds, evidences of indebtedness, or other intangible personal property and must not exceed the value of $100 for each individual award ....”
Under this statute, no CASH prizes could be granted winners of any bingo or keno games, whether live, player-operated or electronic.
The question of the legality of keno came before this Court again in Gallatin County v. D & R Music and Vending, Inc. (1982), 201 Mont. 409, 654 P.2d 998 (Gallatin I). There this Court upheld the validity of keno as it is operated in most of the Montana establishments at the present time. The numbers are selected at random from numbered ping pong balls blown into a tube. This Court said that such a device was in accord with the Bingo and Raffle Law of 1974 and issued mandamus requiring the appropriate officers to issue licenses for the keno machines. Noteworthy in that case, however, is the opinion of Justice Daniel J. Shea, who, specially concurring, noted that it was common knowledge in the state that such keno is played with the expectation that a player would receive Money if he won. Justice Shea pointed out that even though sec. 23-5-412, as above quoted, was in effect, the county attorneys did not prosecute any establishment for paying cash to the winners as a matter of general policy.
This was the state of the law when in early 1985, the plaintiff MPH Company contracted with Bill R. Williams and Imagineering, Inc. for the manufacture of video keno machines. The only theoretical difference between the machines contracted for and the usual version of keno is that the proposed machines would be operated by a single player and the numbers would be flashed on a video screen. The contract was entered into and was to be performed in the early months of 1985.
From the date of Justice Shea’s special concurrence, in December of 1982, until 1985, nothing was done to amend the Bingo and Raffle Law so as to provide that cash would be paid on keno games in this state. Under any objective test, the 1985 and 1987 sessions of the Montana legislature were among the worst in our state history. It is a strange but true fact that the worse a legislature is the more Acts it will pass relating to the same subject.
In 1985, the legislature passed Ch. 465, Laws of Montana (1985), which became sec. 23-5-412, MCA, and which has now been repealed. That statute, as passed in 1985, read as follows:
*352 “Bingo prizes may be paid either in tangible personal property or cash, except that a prize must be paid in tangible personal property if the game is played on a player-operated video game machine.” (Italics supplied.)
It is important to note the change that the 1985 amendment to sec. 23-5-412, MCA, made with respect to its former version. Whereas formerly no cash prizes could be legally awarded for the playing of bingo (and therefore keno), after the amendment, prizes could be paid in cash except only for player-operated video game machines. Thus, in the same establishment, a keno game which was operated by ping pong balls could merit cash prizes, but a player-operated video keno machine in the same premises, could not legally award cash prizes.
Yet, the same 1985 legislature passed a law making valid video draw poker machines (which is a “video game machine”), and allowing the players of such machines to draw their winnings in cash. Chapter 720, Laws of Montana (1985). Except that the draw poker and keno games are different in design, there is no real gambling distinction between a video poker game and a video keno game, or for that matter a video bingo game. They are all “video game machines.”
Was there considerable confusion about the legality of video keno machines at the time of this contract? There certainly was. We need look no further than the finding of District Judge G. Todd Baugh in this case:
“... The court finds that the machines were legal and in compliance with Montana law at the time the contract was to be performed and that the contract, as amended, is therefore enforceable.”
The only feature of the machines manufactured in this case upon which the majority may hinge their decision is that the machines had been modified after manufacture to provide for the payment to winners in cash. The modification involved a print-out which would show the number of game credits to which the winner was entitled. The credits could be paid off by the owner of the machines for the value of goods instead of cash, which would be legal without doubt. It was the eventual establishments that paid these credits in cash.

Severability of the Contract

There is no law of which we have been made aware here that prohibited Imagineering, Inc. from manufacturing the machines in Utah and transporting them to Montana for acceptance by the buyer. The fact is that the machines could not be used for any purpose. They were defective. They did not work. They were inoperable legally or illegally. Imagineering, Inc. admits the deficiencies, and *353 acknowledges in this case that insofar as its performance was concerned, it breached the contract.
“Where an agreement or obligation is incidentally, indirectly, or remotely connected with an illegal transaction, it will generally be enforced if it is supported by an independent consideration so that the plaintiff does not require the aid of the illegal transaction to make out his case. Even though the parties to an action have been engaged in a transaction either malum in se or prohibited by law, if the cause of action between them is disconnected from the illegal act and is founded upon a distinct and collateral consideration, and the plaintiff is not obliged to resort to the illegal agreement or transaction in order to maintain the suit, the illegality of the formal transaction will not impair or bar the right to maintain the suit.”
17 Am.Jur.2d 590, 591, Contracts, sec. 219.
The legality or illegality of the eventual use of the machines, if they had been properly manufactured, should not be an issue in this case. If a hardware store sold on credit to a customer a gun which the customer later used to shoot somebody, the hardware store can still collect on its bill though the gun was used for an illegal purpose. The situation is no different here. The contract, to the extent that it existed between these parties, was legal.

Restitution

The 1987 session of the legislature also busied itself concerning electronic video gambling games. It amended sec. 23-5 402, MCA, to include a definition of a video keno machine as one where the winner could receive cash. Ch. 652, Laws of Montana (1987). The 1987 legislature again defined a “keno machine” by amending sec. 23-5-602, MCA, to include electronic video keno machines where the player could receive cash winnings.
In the circumstances, principles of restitution apply here. Restatement (Second) of Contracts sec. 198 provides:
“A party has a claim in restitution for performance that he has rendered under or in return for a promise that is unenforceable on grounds of public policy if:
“(a) He was excusably ignorant of the facts or of legislation of a minor character, in the absence of which the provision would be enforceable, or
“ (b) He was not equally in the wrong with the promisor. ’ ’ (Emphasis added.)
The parties in this case testified that they thought their machines were legal. The district judge thought they were legal. The minor character *354 of the illegality, that is that the prizes should be paid in values of personal property rather than by cash when video keno machines were used, is obvious when one considers the number of other legal gambling devices or machines which paid off in cash, particularly including live and video keno. In sheer numbers of situations, the public policy was to award cash prizes.
The minor character of the illegality is further demonstrated that in 1989 the legislature adopted the Video Gaming Machine and Control Law, secs. 23-5-602, et seq. Under the new law, video draw poker and keno machines are described, provision is made for their licensing, cash winnings are allowed, and instead of the top $100 per game cash winnings formerly permitted, the top limit now is $800 cash per game for a video keno machine, sec. 23-5-608, MCA, and the payment must be in cash!
Section 198 of the Restatement (Second) of Contracts is particularly applicable here. The purported issue of illegality is whether the winner in using the machines, if they worked, could get cash, or receive the value in goods. Legislative enactments before and after the contract in this case demonstrate the minor character of the difference that relates to illegality. The investors in this case should not take the hit. We ought to promote a better business climate in this state by protecting in-state entrepreneurs from phony defenses.
I would affirm the District Court.